PATTERSON, Respondent, vs. CAPPON, Appellant.

*September 17—October 9, 1906.*

*Tax titles: Second tax deed to same grantee: Effect on former deed: Judgment: As to what matters conclusive: Appeal: Findings of fact: Presumption as to correctness.*

1. Where the grantee in a tax deed secures a second deed on a tax certificate issued prior to his first deed but based on taxes subsequent to those on which his first deed is based, the second deed does not cut off and extinguish his title and interest under the first; and one to whom said grantee afterwards conveys the land may claim title under said first tax deed.

2. In an action to quiet title, brought by one claiming under a tax deed, defendant tendered the defense to the original owners at the time the taxes were levied, who had warranted the title, but they neglected to defend. Plaintiff had judgment, and defendant then brought action against said original owners for breach of the covenant of warranty. *Held,* that the judgment quieting title was conclusive in the later action as against the

claim of said covenantors that the purchase at the tax sale was for the benefit of the covenantee.

3. Where a deed was in evidence and is referred to, but not included, in the bill of exceptions, a finding of the trial court that by such deed the grantee assumed payment of a certain mortgage on the land as a part of the consideration for the conveyance, will be presumed to be correct.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

An action to recover damages for breach of the covenants of a deed. The facts of the case as alleged in the complaint are fully stated in the case on a former appeal to this court, reported in 125 Wis. 198, 102 N. W. 1083. The issues tried were (1) whether or not the plaintiff was evicted as alleged. (2) Did plaintiff suffer damages if evicted and how much? (3) Was the purchase by Smith from Heller, the tax-title claimant, a purchase for and by the plaintiff? The findings of the court and the evidentiary facts are fully covered by the court's findings and serve to present the material facts involved. The court found in substance:

On February 14, 1894, defendant and his wife deeded to John Debus the lot in question for a consideration of $700. This deed was duly recorded. It contained covenants that the grantors were well scised of the premises as of a good, absolute, and indefeasible estate of inheritance in fee simple; that the premises were free and clear of incumbrances, except a recorded mortgage of $400; and that the grantors would forever warrant and defend the premises in the quiet and peaceable possession of the grantee, "his heirs and assigns, against all and every person or persons lawfully claiming the whole or any part thereof." On March 12, 1895, Debus and wife deeded the lot to plaintiff in consideration of $204 then paid them and the assumption by him of the $400 principal of the mortgage and $14 unpaid interest. The deed contains full covenants of warranty, excepting this

mortgage. When this deed was delivered Debus delivered
to plaintiff the deed he had received from defendants. At
the time of the sale and transfer of the lot from defendants
to Debus the taxes which had been assessed and levied for
the year 1893 remained unpaid, and the lot was sold for this
unpaid tax May 15, 1894, to one Simon Heller, who received
the tax-sale certificate, and on October 20, 1897, received a
tax deed of this lot from Milwaukee county, on this certificate,
which then stood unredeemed. The deed was recorded in the
register of deeds' office for Milwaukee county on October 21,
1897. Plaintiff was first notified of this outstanding tax-
sale lien and deed in July, 1903, and he immediately there-
after notified defendants thereof and demanded that they pro-
cure the tax title for him. This they refused to do. The
lot was unoccupied at the time of the levy and sale for taxes
and when the deed issued, and it remained unoccupied until
the year 1903, when Simon Heller went into actual posses-
sion by cultivating and raising a crop of grain on it. On
October 5, 1903, Heller conveyed his title and interest in
the lot to one Darwin W. Smith by special warranty deed.
On October 8, 1903, Smith brought an action in Milwaukee
county circuit court against plaintiff to quiet title to the lot,
and on October 10, 1903, plaintiff served a copy of the sum-
mons and complaint in the action on defendants, with a notice
of facts on which the action was based, and that he would
look to defendants to make good their covenants in their deed
to Debus. He therein tendered defendants the defense of the
action brought by Smith. The defendants refused and neg-
lected to defend this action. On October 30, 1903, the court
awarded judgment that Smith was the owner in fee of the
lot, and quieted title to it as against plaintiff. Smith has
held possession under the deed and judgment. The plaintiff
was dispossessed by Heller at the time he recorded his deed.

The court found that plaintiff had paid $204 at the time

Debus delivered the deed of the lot to him, and that he there-
after paid the mortgage of $400, principal, and $14 interest,
making a total of $618, the amount of his damages caused by
defendants' breach of the covenant of their deed of quiet and
peaceable possession of the lot. Mary E. Cappon was the
wife of *Jesse Cappon* when they gave their deed to Debus, and
she signed the deed only to bar her right of dower in the lot.
Smith bought the lot at the request of Charles T. Hickox,
who was then plaintiff's attorney. The plaintiff refused to
purchase from Simon Heller or have anything to do with such
transfer by Heller to Smith. He had no interest in the trans-
fer, and is in no way interested in or benefited by it. On
May 25, 1898, Milwaukee county gave a tax deed to Simon
Heller of this lot on a tax-sale certificate for the taxes of
1894, which deed was recorded in the proper office in Mil-
waukee county on the same day.

Upon these facts the court held that plaintiff was evicted
from the lot; that such eviction was a breach of the covenants
of defendants' warranty deed to Debus; that these covenants
were transferred to plaintiff by the deed from Debus and
vested him with the right of action growing out of the breach;
that they were broken by plaintiff's eviction from the lot by
Heller when he recorded his first tax deed; that Smith is now
the successor in title and ownership of the interest acquired
by Heller; that plaintiff has been, and is now, evicted from
the lot and has suffered the damages claimed by him, namely,
the sum of $618, the amount he paid as purchase price for
the premises; and that the purchase by Smith was not by or
for the benefit of plaintiff. Judgment was awarded that
plaintiff recover from defendant *Jesse Cappon* the sum of
$618, the purchase price paid for the lot, with interest there-
on from October 21, 1897. Defendant appeals from this
judgment.

*Charles J. Weaver,* for the appellant.
*Charles T. Hickox,* for the respondent.

SIEBECKER, J.   The finding of the court that plaintiff was evicted by the conveyance to Heller under the tax deed from the county for the delinquent tax of 1893 is assailed by appellant upon the ground that the title thus acquired by Heller was extinguished by the taking of a subsequent tax deed based upon the tax sale for the unpaid taxes of 1894.   There is no dispute that Heller obtained two tax deeds upon the lot, the first in October, 1897, based on the delinquent tax of 1893, and the second in May, 1898, based on the delinquent tax of 1894.   The claim is that, since the second deed was based on a tax levied subsequent to the one of the first tax deed, this second tax deed cuts off all title and interest conveyed by the first tax deed.   Such would unquestionably have been the result if the second conveyance had been to another person than the grantee under the first tax deed.   No satisfactory reasons are presented showing why such a consequence should follow where the same person takes the two conveyances.   If conveyances are made to different persons under such circumstances, it is obvious that the failure of the grantee in the prior tax deed to pay subsequent taxes must result, in legal effect, the same, as regards the state's enforcement of its lien against the land by sale and forfeiture of title, as default by the original owner to discharge this lien against the land.   No such consequences are necessarily involved when the tax-title grantee secures a second tax deed on a tax certificate issued prior to his first deed.   Under such circumstances the state, having received payment in full of its tax, may convey the title arising out of such sale, the grantees being the same person.   The title thus conveyed raises no conflict of adverse interest or ownership, and no revocation or foreclosure of the interest vested under the prior deeds need be effected to grant a clear title by the separate deeds.   Under such circumstances there is no obstacle in the law to letting the title and interest covered by each deed stand as the foundation of a grant, unaffected by subsequent conveyances, and

to treating them as separate conveyances and to allowing any subsequent one to aid whatever infirmity may exist in a prior one. This view was adopted in the case of *Lybrand v. Haney,* 31 Wis. 230, where the tax-deed grantee took deeds on sales for taxes which were subsequent to the one on which the first issued but prior to the issuance of the first deed. The court there said: "Hence the taking of the tax deeds upon the certificates issued on the sales for nonpayment of the taxes for the last-mentioned years, instead of paying such taxes, was no violation of any duty or obligation. Under these circumstances we see no good reason why the plaintiff could not strengthen his title by taking such deeds, or why he may not maintain this action upon them, notwithstanding he may have a good title without them by virtue of the deeds" theretofore issued. This meets appellant's contention that no rights could be claimed under the first tax deed to Heller. We must hold that this first tax deed remains a valid conveyance of the title and that Heller conveyed such title to his grantee, Smith.

It is contended that the purchase by Smith was for the plaintiff's benefit and that he is, in fact, the purchaser under such conveyance. The court found that plaintiff refused to purchase Heller's interest or to become interested in that transaction in any respect after notice that his attorney had furnished Smith the money to purchase the lot, and that he in no way acquired any legal or equitable rights to the premises by virtue of that transfer. The evidence on this subject is not in conflict, and nothing appears to impeach the plaintiff's claim that he absolutely refused to purchase the outstanding tax title or to become a participant in the purchase by Smith for his attorney. No way is suggested and none is perceived of compelling him to take the Smith title and pay the consideration actually received by Heller. The evidence fails to show that plaintiff colluded with his attorney to make this purchase for his benefit or interest. This state of facts

is conclusive and necessarily refutes appellant's claim that plaintiff is the beneficiary in fact under this sale. Another answer to this contention may be found in the conclusiveness of the judgment in the case of Smith against plaintiff, which adjudges the title to the lot to be in Smith, after plaintiff had notified defendants of the object of this action, had served them with copies of the summons and complaint, and had tendered them the defense in the action.

We must hold that the court's findings on this issue are sustained by the evidence and that the title and possession vested in Heller and his grantee, Smith, and that plaintiff's complaint of an eviction is established. The warranty of peaceable and undisturbed possession, as stated in the opinion on the former appeal, "is, of course, breached by an eviction which deprives the grantee of the possession so warranted, and gives him the right of substantial recovery limited to the original purchase price of the land."

The court awarded damages in the sum of $618, the amount plaintiff alleges he paid to Debus for the land. Appellant claims that this is excessive, and that the item of $414, paid on the mortgage, was improperly allowed. The damages allowed were made up of $204, the sum paid by plaintiff to Debus in money, and the sum of $414, the amount of the mortgage on the land when so transferred and which plaintiff assumed to pay as part of the consideration. The defendants admit the payment to Debus of $204 in money, and allege that the plaintiff paid the mortgage indebtedness, took an assignment of the same, and that such assignment and payment "constituted a payment of said note and mortgage which said plaintiff had assumed and agreed to pay." These admissions are quite clearly to the effect that there was no issue taken with the plaintiff upon the allegation that he actually paid the sum of $618 as the consideration for the lot, and that he assumed the mortgage under the deed from Debus and wife and had paid it before the action was

commenced.    The record, however, discloses that this deed
was introduced in evidence and submitted to the trial court,
and the court found upon this question that plaintiff by such
conveyance assumed payment of this mortgage as part of the
consideration for the sale and transfer thereof.    The bill of
exceptions does not contain this deed; reference is, however,
made to it.    Under these circumstances it must be presumed
that it contained an agreement of the parties showing that
plaintiff assumed payment of this mortgage as part of the
consideration.    *Post v. Roberts,* 127 Wis. 605, 106 N. W.
1099.    This in itself is sufficient to sustain the court in its
conclusion that plaintiff paid $618 as the purchase price of
the land and in holding that the plaintiff paid the mortgage
so assumed by him.    The amount so paid was a part of the
damages in the case, and judgment was properly awarded
for the recovery of the sum of $618 and interest.

, *By the Court.*—Judgment affirmed.